**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| FITISTICS, LLC,<br>Plaintiff,<br>v.<br>POLAR ELECTRO OY,<br>Defendant. | Civil Action No. 2:24-cv-00978<br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fitistics, LLC ("Fitistics" or "Plaintiff") files this Complaint against Defendant Polar Electro Oy ("Polar Electro" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. This is a patent infringement action regarding Defendant's infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | U.S. Patent No. | Reference |
|---|---|---|
| A. | 8,915,823 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8915823 |
| B. | 11,252,235 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11252235 |
| C. | 11,252,236 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11252236 |

2. Fitistics seeks injunctive relief and monetary damages.

### PARTIES

3. Plaintiff Fitistics, LLC is a limited liability company filed under the laws of the State of Connecticut, with its principal place of business in Connecticut.

4. Defendant Polar Electro Oy is a company organized and existing under the laws of Finland, with its principal place of business located at Professorintie 5, Kempele, Finland, 90440. On information and belief, Polar may be served *via* an officer or director at the address above.

5. Defendant designs, manufactures, makes, uses, sells, and/or imports into the United States watches with biometric monitoring capabilities.

6. Defendant's watches are marketed, used, offered for sale, and/or sold throughout the United States, including within this District.

**JURISDICTION AND VENUE**

7. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331 and 1338(a).

9. The Court has personal jurisdiction over Defendant because: Defendant has minimum contacts within the State of Texas and this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this District; Defendant has sought protection and benefit from the laws of the State of Texas; Defendant regularly conducts business within the State of Texas and within this District, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and in this District.

10. Defendant is subject to this Court's specific and general personal jurisdiction due at least to their substantial business in this forum, including (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other

persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

11. Specifically, Defendant intends to do and do business in, and has committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, and offers and sends its products or services, including those accused of infringement here, to customers and potential customers located in this State, including in this District, and in the United States. *See* https://www.polar.com/welcome/ (stating Polar Electro is available in several countries, including the United States).

12. Pursuant to the "Privacy Notice," Defendant owns and operates and all affiliated websites, including all subdomains, subdirectories, mobile sites, and mobile applications. *See* https://www.polar.com/en/legal/privacy-notice (stating that "'Polar' refers to Polar Electro Oy and its subsidiaries" and that "Polar's website" allows consumers "to buy Polar's products via the links provided on the Polar.com website.") (last updated Aug. 21, 2024).

13. On information and belief, Defendant also owns the website polar.com. *See polar.com*, WHOIS, https://www.whois.com/whois/polar.com (last updated Mar. 22, 2024).

14. Defendant has committed acts of infringement in this District, including, but not limited to, making, using, selling, offering for sale, and importing of the Accused Products.

15. Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendant regularly sells (either directly or indirectly), its products within this District. For example, Defendant has placed infringing products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas. Defendant is subject to this Court's specific and/or general jurisdiction pursuant to due

process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and Judicial District, including its infringing activities alleged herein, from which Defendant has derived substantial revenue from goods sold to Texas residents and consumers.

16. Venue is proper against the Defendant in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). *See also In re: HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

## THE TECHNOLOGY

17. Fitistics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

18. The Asserted Patents are generally directed to innovations in using smart devices to assist in processing and displaying recorded biometric data, including, but not limited to, data generated during exercise.

19. Fitistics was founded by Robert Nutini and Sean McKirdy, the co-inventors of the Asserted Patents.

20. Mr. Nutini received a B.S. in Engineering from University of Connecticut in 1999 and a M.B.A from the University of Phoenix in 2007.

21. Mr. McKirdy attended Central Connecticut State University in the Industrial Technology program with a specialization in Electrical Systems.

22. Mr. Nutini and Mr. McKirdy first met in 1998 during their respective internships at Pratt & Whitney, one of the world's leading commercial and military aircraft engine manufacturers.

23. Mr. Nutini and Mr. McKirdy conceived the idea of capturing data from devices such as exercise equipment and biological monitoring devices and began researching the fitness and healthcare industries to see what solutions existed and formed Fitistics to pursue research and development and commercialization of their ideas.

24. Fitistics eventually began developing system specification documents that would be used as a basis for system development of an interface device hardware and supporting website and data upload software that would be used to track data by future customers.

**THE ACCUSED PRODUCTS**

25. Fitistics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

26. Defendant has infringed and continue to infringe the Asserted Patents by making, using (including by testing and developing), selling, offering for sale, and/or importing heart rate sensors and smart watch devices, and associated hardware, software, and functionalities that practice each and every limitation of the Asserted Patents. Exemplary heart rate sensors include, but are not limited to, the Polar H10, Polar Verity Sense, Polar OH1+, Polar O9, and the T31 coded™ transmitter. Exemplary smart watch devices include, but are not limited to, the Polar Grit X2 Pro, Polar Grit X2 Pro Titan, Polar Vantage V3, Polar Ignite 3 Titanium, Polar Ignite 3, Polar Ignite 2, Polar Ignite, Polar Pacer Pro, Polar Pacer, Polar Unite, and the Polar M460. These products are further used in association with hardware, software, and functionalities provided by the Defendant for use with third-party smartphones and tablets via the use of applications, including, but not limited to, the Polar Flow App, Polar Flow Web Service, and other applications that facilitate the transfer of information between the accused heart rate monitors and/or the accused smart watch devices, the Defendant, and/or its affiliates, and third-party smartphones,

tablets, computers, and servers including, but not limited to, cloud servers and systems that store, process, and gather information from third-party smartphones, tablets, computers. The devices, applications, and functionalities described in this paragraph will be collectively referred to herein as the Accused Products.

27. Each of the Accused Products is provided by and imported and distributed in the United States and this judicial district by and/or at the direction and control and/or instigation of Defendant, who is responsible for the infringing activity identified in this Complaint.

## EXAMPLES OF DEFENDANT'S MARKETING OF THE ACCUSED PRODUCTS AND FEATURES

28. Fitistics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

29. The Accused Products have features, including, but not limited to, at least the following: workout tracking, heart rate monitoring, Sp02 monitoring, sleep monitoring, and/or VO2 max monitoring (the "Features"). *See, e.g.*, *Polar Grit X2 Pro: Premium Outdoor Watch,* POLAR ELECTRO OY, https://www.polar.com/en/grit-x2-pro?sku=900110283 (last visited Nov. 22, 2024) (indicating that Polar Flow is the online window to training, activity, and sleep). The Accused Products also have components that support these features, including, but not limited to, processor chips, connectivity systems, and biometric tracking sensors. *See Polar H10*, POLAR ELECTRO OY, https://www.polar.com/us-en/sensors/h10-heart-rate-sensor?sku=920106242 (last visited Nov. 22, 2024) (indicating that the Polar H10 Heart Rate Sensor connects with Bluetooth® and ANT+ systems).







Source: *Polar Grit X2 Pro: Premium Outdoor Watch,* POLAR ELECTRO OY, https://www.polar.com/en/grit-x2-pro?sku=900110283 (last visited Nov. 22, 2024)

## Can Polar H10 be used together with a sports watch?

Yes, Polar H10 heart rate sensor can be used together with a sports watch, making it a versatile choice for athletes who want to track their heart rate accurately during workouts. Polar H10 is compatible with many sports watches that support Bluetooth and ANT+ connectivity, including Polar sports watches and other brands.

**Here are some steps to connect your Polar H10 to a sports watch:**

1. Wear the H10 heart rate sensor around your chest, directly against your skin and moisten the electrode area.
2. Put your sports watch in pairing mode. This usually involves going to the settings menu and selecting the option to add a new device or heart rate sensor.
3. Select Polar H10 from the list of available devices on your sports watch.

Once paired, your sports watch should receive heart rate data directly from Polar H10 during your training sessions.

For more detailed guidance, here are some relevant support articles from Polar:

- Pairing Polar H10 with Polar watch ↗
- Training with Polar H10 built-in memory and Polar Beat ↗

Source: *Polar H10*, POLAR ELECTRO OY, https://www.polar.com/us-en/sensors/h10-heart-rate-sensor?sku=920106242 (last visited Nov. 22, 2024)

30. The features drive the popularity and sales of the Accused Products.

# Heart Rate Sensors

When you train with a heart rate monitor, you'll get reliable and accurate data to see how hard your body is working. Polar's heart rate sensors are widely recognized as the Gold Standard of heart rate tracking and trusted by users and researchers around the globe.

Source: *Heart Rate Sensors*, POLAR ELECTRO OY, https://www.polar.com/us-en/products/heart-rate-sensors/ (last visited Nov. 22, 2024).

31. For instance, the Defendant markets the Accused Products, including but not limited to products using the Polar Flow App, as providing "a . . . tool for planning and following up on your training, activity and sleep. Get the most out of your Polar device with Polar Flow," as described in the following screenshot from Polar's website.






Source: *Polar Flow*, POLAR ELECTRO OY, https://flow.polar.com/ (last visited Nov. 22, 2024).

32. The Accused Products cause biometric and health-related data to be transferred between the Defendant's smart watches and heart rate sensors to third-party mobile phones and tablets with, for example, but not limited to, the Polar Flow App and Polar Flow Web Service, as well as cloud-based servers. Defendant's smart watch devices and applications also communicate with and can be used in conjunction with third-party smartphones and tablets.






Source: *Polar Flow app by Polar Electro*, APPLE, INC. (last visited Nov. 22, 2024), https://apps.apple.com/us/app/polar-flow/id717172678.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,915,823**

33. Fitistics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

34. The USPTO duly issued U.S. Patent No. 8,915,823 (the "'823 patent") on December 23, 2014 after a full and fair examination of Application No. 13/350,790, which was filed on January 15, 2012. *See* '823 patent at p.1..

35. Fitistics owns all substantial rights, interest, and title in and to the '823 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers, and to collect damages for all relevant times.

36. The '823 patent describes a system and method for using a biometric monitoring device such that the user may process and display recorded exercise workout session data. *See* '823 patent at Abstract.

37. The claims of the '823 patent are not directed to an abstract idea.

38. Defendant has directly infringed and continue to directly infringe on one or more claims of the ’823 patent by making, using, selling, offering for sale, and importing the Accused Products.

39. Defendant has directly infringed (literally or under the doctrine of equivalents) at least claim 1 of the ’823 patent.

40. For example, Defendant performs, including, but not limited to, by using and testing the Accused Products, a method for managing communications between a cardio exercise device including a treadmill, a stationary bicycle, a stepper machine, an elliptical machine, a spin bike or a rowing machine, and a portable storage device, the method comprising: establishing a communication link between the exercise device and the portable storage device; transferring data between the portable storage device and the exercise device via the communication link; generating workout data via a processor which is configured to receive sensor data from at least one of a body sensor configured to sense a body parameter of a user and a cardio exercise device sensor configured to sense an operation of the cardio exercise device; and communicating the workout data to the portable storage device for storage in at least one of the portable storage device and a remote storage medium.

41. Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42. Plaintiff has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the ’823 patent.

43. Plaintiff has not offered for sale nor sold any product implicated by 35 U.S.C. § 287 with respect to the ’823 patent.

44. Upon information and belief, Defendant has had knowledge of the ’823 patent (and its infringing activity) at least as of December 23, 2014, when the ’823 patent issued.

45. Defendant has also indirectly infringed and continue to indirectly infringe one or more claims of the ’823 patent by inducing others to directly infringe the ’823 patent. Defendant has induced end-users and other third parties to directly infringe (literally or under the doctrine of equivalents) the ’823 patent by using the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’823 patent, including, for example, claim 1 of the ’823 patent. Such steps by Defendant has included, among other things, advising or directing end-users and other third parties to use the Accused Features in the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third parties to use the Accused Products in an infringing manner. Defendant has performed and continues to perform these steps, which constitute induced infringement with the knowledge of the ’823 patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Products by others would infringe the ’823 patent.

46. Since at least as early as December 23, 2014, Defendant has also indirectly infringed and continue to indirectly infringe by contributing to the infringement of the ’823 patent. The Defendant has contributed and continues to contribute to the direct infringement of the ’823 patent by personnel, contractors, customers, and other end users by encouraging them to use the

Accused Products as described in one or more claims of the ’823 patent. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’823 patent, including, for example, claim 1 of the ’823 patent. The special features include, for example, the method recited in claim 1, including all intermediary steps that allow the claimed method to be performed. The special features constitute a material part of the invention of one or more of the claims of the ’823 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant’s contributory infringement is ongoing.

47. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Plaintiff’s patent rights.

48. Defendant’s actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

49. Defendant’s direct infringement of one or more claims of the ’823 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.

50. Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,252,235

51. Fitistics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

52. The USPTO duly issued U.S. Patent No. 11,252,235 (the "'235 patent") on February 15, 2022 after a full and fair examination of Application No. 16/570,424, which was filed on September 13, 2019. *See* '235 patent at p.1.

53. Fitistics owns all substantial rights, interest, and title in and to the '235 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers, and to collect damages for all relevant times.

54. The '235 patent is titled "System And Method For Processing Information." The '235 patent describes a system and method for using a biometric monitoring device such that the user may detect, record, and process personal biometric data. *See* '235 patent at Abstract.

55. The claims of the '235 patent are not directed to an abstract idea.

56. Defendant has directly infringed and continue to directly infringe on one or more claims of the '235 patent by making, using, selling, offering for sale, and importing the Accused Products.

57. Defendant has directly infringed (literally or under the doctrine of equivalents) at least claim 1 of the '235 patent.

58. For example, the Accused Products include a biological monitoring device. The biological monitoring device of the Accused Products comprises: (a) at least one sensor, included within the biological monitoring device, configured to obtain heart rate data associated with a person wearing the biological monitoring device; (b) at least one processor in signal communication with the at least one sensor; (c) communication circuitry configured for bi-directional wireless communication with an external bio-metrically secure remote processing mobile device; d) memory, included within the biological monitoring device, associated with one or more of the at least one processor and configured to store software instructions, which, when

executed by the one or more of the at least one processor, cause the one or more of the at least one processor to perform operations comprising; (i) establish, via the biological monitoring device processor, a bidirectional wireless communication link with the external biometrically secure remote processing mobile device; (ii) obtain, via the biological monitoring device processor from the external bio-metrically secure remote processing mobile device, biological monitoring device configuration information; (iii) obtain data, via the biological monitoring device processor, from the at least one sensor included within the biological monitoring device on at least one of an active or passive basis; (iv) generate, via the at least one biological monitoring device processor, heart rate data responsive to the obtained sensor data; (v) process, via the biological monitoring device processor, the heart rate data, wherein the processing of the heart rate data includes analyzing the heart rate data to detect at least one of an irregular heart rate, an abnormal heart rate, and an irregular heart rhythm; (vi) generate, via the at least one biological monitoring device processor, resultant data based on the processing of at least one of the heartrate data, the irregular heart rate, the abnormal heart rate, and the irregular heart rhythm wherein the generated resultant data is at least one of a notification associated with a health condition of the person wearing the biological monitoring device and heart rate profile data of the person wearing the biological monitoring device; (vii) display, via the biological monitoring device display, at least one of the generated resultant data and the processed heart rate data; (viii) store, via the biological monitoring device memory, at least one of the heart rate data, the processed heart rate data, and the generated resul-tant; (ix) communicate, via the biological monitoring device wireless communication circuitry, at least one of the heart rate data, the processed heart rate data, and the generated resultant data to the external bio-metrically secure remote processing mobile device, wherein the biological monitoring device configuration information received from the external biometrically secure

remote processing mobile device is used to control at least one of the functionality and display of the biological monitoring device.

59. Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

60. Plaintiff has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the ’235 patent.

61. Plaintiff has not offered for sale nor sold any product implicated by 35 U.S.C. § 287 with respect to the ’235 patent.

62. Upon information and belief, Defendant has had knowledge of the ’235 patent (and its infringing activity) at least as of February 15, 2022, when the ’235 patent issued.

63. Defendant has also indirectly infringed and continue to indirectly infringe one or more claims of the ’235 patent by inducing others to directly infringe the ’235 patent. Defendant has induced end-users and other third parties to directly infringe (literally or under the doctrine of equivalents) the ’235 patent by using the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’235 patent, including, for example, claim 1 of the ’235 patent. Such steps by Defendant have included, among other things, advising or directing end-users and other third parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third parties to use the Accused Products in an infringing manner. Defendant has performed and continues to perform these steps,

which constitute induced infringement with the knowledge of the ’235 patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Products by others would infringe the ’235 patent. Defendant’s direct and indirect infringement of the ’235 patent has been and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.

64. Since at least as early as February 15, 2022, Defendant has also indirectly infringed and continue to indirectly infringe by contributing to the infringement of the ’235 patent. Defendant has contributed and continue to contribute to the direct infringement of the ’235 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products as described in one or more claims of the ’235 patent. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’235 patent, including, for example, claim 1 of the ’235 patent. The special features include, for example, the at least one sensor, as recited in claim 1, included within the biological monitoring device, configured to obtain heart rate data associated with a person wearing the biological monitoring device. The special features constitute a material part of the invention of one or more of the claims of the ’235 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant’s contributory infringement is ongoing.

65. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Plaintiff’s patent rights.

66. Defendant’s actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

67. Defendant's direct infringement of one or more claims of the '235 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

68. Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,252,236**

69. Fitistics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

70. The USPTO duly issued U.S. Patent No. 11,252,236 (the "'236 patent") on February 15, 2022 after a full and fair examination of Application No. 16/570,496, which was filed on September 13, 2019. *See* '236 patent at p.1.

71. Fitistics owns all substantial rights, interest, and title in and to the '236 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers, and to collect damages for all relevant times.

72. The '236 patent is titled "System And Method For Processing Information." The '236 patent describes a system and method for processing biological information that includes a monitoring device configured to receive biological data from a user. *See* '236 patent at Abstract.

73. The claims of the '236 patent are not directed to an abstract idea.

74. Defendant has directly infringed and continue to directly infringe on one or more claims of the '236 patent by making, using, selling, offering for sale, and importing the Accused Products.

75. Defendant has directly infringed (literally or under the doctrine of equivalents) at least claim 14 of the ’236 patent.

76. For example, Defendant performs, including, but not limited to, by using and testing the Accused Products, a method for managing communications between a biometrically secure handheld device, a remote processing device, and a biological monitoring device that is external to the biometrically secure handheld mobile device, the method comprising: obtaining, by a biometric security sensor included within the biometrically secure handheld device, a biometric input of a user of the biometrically secure handheld mobile device and storing the biometric input in a memory device associated with a processor located within the biometrically secure handheld mobile device wherein the biometrically secure handheld mobile device software is configured to use the biometric input to protect at least one of user biological data and exercise regimen data of the user that is received by the biometrically secure handheld mobile device from the biological monitoring device; establishing, via the biometrically secure handheld mobile device processor, a first bidirectional wireless communications link when coming into proximity with the biological monitoring device; communicating, via the biometrically secure handheld mobile device processor the biological monitoring device, configuration information used to control the operation of the biological monitoring device; obtaining, via the biometrically secure handheld mobile device processor, at leas one of user workout performance data and user biological data from a memory location associated with the biological monitoring device; processing, via the biometrically secure handheld mobile device processor, at least one of the user workout performance data and the user biological data wherein the processing of the user biological data and the user workout data includes generating resultant data, wherein the generated resultant data includes at least one of encrypted exercise regimen data, encrypted user biological data, graphical data responsive to the

generated resultant data, and non-graphical data responsive to the generated resultant data; storing, in the memory located location included within the biometrically secure handheld mobile device, configuration information related to controlling the operation of the biological monitoring device and at least one of the processed user workout performance data, the processed user biological data, and the generated resultant data; establishing, via the biometrically secure handheld mobile device processor, a second bi-directional wireless communications link with the remote processing device, wherein the second bi-directional wireless communication link is used by the biometrically secure handheld mobile device software to upload at least one of the processed user workout performance data, the processed user biological data, and the generated resultant data to the remote processing device; displaying, via a display included within the biometrically secure handheld mobile device, at least one of the user workout data, the user biological data, the processed workout data, and the processed biological data.

77. Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

78. Plaintiff has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the ’236 patent.

79. Plaintiff has not offered for sale nor sold any product implicated by 35 U.S.C. § 287 with respect to the ’236 patent.

80. Upon information and belief, Defendant has had knowledge of the ’236 patent (and its infringing activity) at least as of February 15, 2022, when the ’236 patent issued.

81. Defendant has also indirectly infringed and continue to indirectly infringe one or more claims of the ’236 patent by inducing others to directly infringe the ’236 patent. Defendant has induced end-users and other third parties to directly infringe (literally or under the doctrine of equivalents) the ’236 patent by using the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’236 patent, including, for example, claim 14 of the ’236 patent. Such steps by Defendant have included, among other things, advising or directing end-users and other third parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third parties to use the Accused Products in an infringing manner. Defendant has performed and continues to perform these steps, which constitute induced infringement with the knowledge of the ’236 patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Products by others would infringe the ’236 patent. Defendant’s direct and indirect infringement of the ’236 patent has been and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.

82. Since at least as early as February 15, 2022, Defendant has also indirectly infringed and continue to indirectly infringe by contributing to the infringement of the ’236 patent. Defendant has contributed and continue to contribute to the direct infringement of the ’236 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products as described in one or more claims of the ’236 patent. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’236 patent, including, for example,

claim 14 of the ’236 patent. The special features include, for example, the at least one sensor, as recited in claim 14, included within the biological monitoring device, configured to obtain user biological data and exercise regimen data associated with a person wearing the biological monitoring device. The special features constitute a material part of the invention of one or more of the claims of the ’236 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant’s contributory infringement is ongoing.

83. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Plaintiff’s patent rights.

84. Defendant’s actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

85. Defendant’s direct infringement of one or more claims of the ’236 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.

86. Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

87. Fitistics hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

88. Fitistics requests that the Court find in its favor and against Defendant, and that the Court grant Fitistics the following relief:

A. Judgment that one or more claims of each of the Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by the Defendant or all others acting in concert therewith;

B. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted Patents; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entity;

C. Judgment that Defendant accounts for and pays to Fitistics all damages to and costs incurred by Fitistics because of Defendant's infringing activities and other conduct complained of herein;

D. Judgment that Defendant's infringements of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

E. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

F. That this Court declare this an exceptional case and award Fitistics its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

G. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 26, 2024

Respectfully submitted,

By: */s/ C. Matthew Rozier*

C. Matthew Rozier (CO 46854)*
Kenneth A. Matuszewski (IL 6324308)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Telephone: (708) 870-5803
Email: matt@rhmtrial.com
Email: kenneth@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff FITISTICS, LLC***

*Admitted to the Eastern District of Texas